UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
SHATELL SPURGEON,

              Petitioner,                 **MEMORANDUM & ORDER**

   - against –                        11-CV-600 (KAM)

WILLIAM LEE,

              Respondent.
---------------------------------X
**MATSUMOTO, United States District Judge:**

       *Pro se* petitioner Shatell Spurgeon ("petitioner") is
incarcerated pursuant to a judgment of conviction imposed in
Supreme Court, Queens County, for Manslaughter in the First
Degree and Criminal Possession of a Weapon in the Second Degree.
(*See* ECF No. 8, Amended Petition for Writ of Habeas Corpus dated
4/27/12 ("Am. Pet."), at 1, 3; *see also* ECF No. 9, Memorandum of
Law [in Support of Amended Petition] ("Mem.").)  Alleging that
his state custody violates his federal and constitutional
rights, petitioner seeks relief by means of a petition for a
writ of habeas corpus brought under 28 U.S.C. § 2254.  (*See* Am.
Pet.)  For the reasons set forth below, Mr. Spurgeon's amended
petition is denied.

**BACKGROUND**

       Petitioner's conviction, sentence, and the instant
petition stem from the shooting and subsequent death of Damon
Waiters.  On April 22, 2001, Damon Waiters and Alvin Briggs

arrived at a store in the Far Rockaway neighborhood of Queens County, New York. (*See* Am. Pet. at 2.) According to the prosecution, Mr. Briggs and petitioner stared at each other for about 30 seconds, then engaged in a brief verbal exchange while standing in the street outside the store. (*See* ECF No. 19, Aff. and Mem. of Law in Opp'n to Pet. for Writ of Habeas Corpus dated 10/3/12 ("Opp."), at 2-3.) As Mr. Briggs and Mr. Waiters walked towards their car, Mr. Spurgeon fired several shots in the direction of Mr. Briggs that struck and killed Waiters. (*Id.* at 3.) Despite an ongoing police search for Mr. Spurgeon in connection with the killing, he was not arrested until he surrendered to the police on October 1, 2002. (*Id.* at 3-4.) Petitioner rejects the prosecution's description of the crime and maintains his innocence. (*See* Am. Pet. at 1-2.)

## A. The Trial

Following his arrest, petitioner was charged with two counts of Murder in the Second Degree (N.Y. Penal Law § 125.25[1] and [2]), Attempted Murder in the First Degree (N.Y. Penal Law § 110/125[1], Reckless Endangerment in the First Degree (N.Y. Penal Law § 120.25), and one count each of Criminal Possession of a Weapon in the Second and Third Degrees (N.Y. Penal Law §§ 265.03[2], 265.02-4). (Am. Pet. at 3; Queens County Indictment No. 842/03.) Petitioner proceeded to trial

before a jury in Supreme Court, Queens County.  (*See* Am. Pet. at 3.)

During the trial, the prosecution called Mr. Briggs, who was cooperating with the prosecution, but he refused to testify about the shooting once on the stand.  (ECF No. 16, Trial Transcript ("Tr.") at 260-70.)  The trial court held Mr. Briggs in contempt and ordered him incarcerated.  (*Id.* at 272-73.)  After spending time in custody on the contempt charge, Mr. Briggs, through his counsel, indicated that he would testify if given immunity for his testimony.[1]  (*Id.* at 484-85.)  When recalled to the stand, he explained that he wanted to do what was right by testifying, even though he had initially refused to do so due to fear for his and his family's safety if he were to testify against petitioner.  (*See id.* at 489-92.)

The prosecution also called Victor Holloway, who testified that he lived in the same building as petitioner and that his mother was friends with petitioner.  (Tr. at 370.) Holloway further testified that he was inside the store on the day Mr. Briggs was shot and saw Mr. Briggs outside the store, but he did not recall whether Mr. Briggs was with anyone else or doing anything in particular.  (*Id.* at 375-76.)  The prosecution attempted to refresh Mr. Holloway's recollection with a

---

[1] When Mr. Briggs first refused to testify by "plead[ing] the fifth," he was advised by the trial court that he had been granted immunity for his testimony and was required to answer the questions asked of him.  (*Id.* at 266.)

document, but Mr. Holloway claimed that he did not recall writing the document, speaking with the police about the shooting, seeing anyone with Mr. Briggs, or seeing petitioner arguing with or talking to Mr. Briggs prior to the shooting. (*Id.* at 376-78.)  Mr. Holloway also denied having told the prosecutor anything different prior to entering the courtroom. (*Id.* at 379.)  Finally, Mr. Holloway refused to acknowledge the presence of those he did know in the audience and testified that he did not recognize anyone in the audience.  (*Id.* at 379-382.)

After this line of questioning, the prosecutor offered Mr. Holloway's written statement into evidence and moved for Mr. Holloway to be declared a hostile witness.  (*Id.* at 382-83.) The trial court received the statement in evidence over the objection of defense counsel.[2]  (*Id.* at 387.)  The statement indicated that Mr. Holloway had seen Mr. Spurgeon arguing with Mr. Briggs prior to Mr. Spurgeon firing gunshots at Mr. Briggs' car.  (*See id.* at 384.)

During his summation, defense counsel referenced Mr. Holloway's written statement and argued that it demonstrated a lack of intent to cause injury to Mr. Briggs.  (*Id.* at 611.) Defense counsel also told the jury that they would be able to

---

[2] While discussing jury instructions, the trial court clarified that the statement was admissible for impeachment purposes pursuant to N.Y. C.P.L. § 60.35(2), but not as evidence in the prosecution's case-in-chief, and that the jury would be instructed that they could only consider the statement as to Mr. Holloway's credibility.  (*Id.* at 574.)

take the statement with them "in the back" for deliberations.
(*See id.*)  During the state's summation, the prosecution stated
that Mr. Holloway's statement was not in evidence and could only
bear on his credibility.  (*Id.* at 635.)  While charging the
jury, the judge instructed that prior inconsistent statements
could not be considered for their truth, but could be considered
in assessing the witness's own trial testimony.  (*Id.* at 663-
64.)  Neither the prosecution nor the defense objected to the
instruction.

Mr. Waiters' grandmother testified for the prosecution
and stated that Mr. Waiters was 20 years old, attending college
full-time, and working as a teacher's aide full-time at the time
of his death.  (*Id.* at 466.)  She further testified that she had
spoken to Mr. Briggs after the shooting and advised him to
report what had happened, because he was present when the
shooting occurred and had driven Mr. Waiters to the hospital
afterward.  (*Id.* at 474.)

Rashawn Walker, Mr. Waiters' brother, testified that
he and his brother had grown up with petitioner, who was friends
with Mr. Waiters.  (*Id.* at 543-44.)  Mr. Walker also testified
that Mr. Waiters had been attending community college and
working as a teacher's aide at the time of his death.  (*Id.* at
543.)  Mr. Walker testified that he confronted Mr. Spurgeon

after the shooting, and that Mr. Spurgeon told him that he loved Mr. Waiters and that "it was an accident." (*Id.* at 546.)

Petitioner did not testify at trial. After both sides rested, petitioner's counsel moved to dismiss the murder charge and to include a lesser-included charge of manslaughter in the first degree. (*Id.* at 566-67.) Defense counsel explained that if the jury believed that petitioner was the shooter, petitioner could receive manslaughter in the first degree instead of murder in the second degree. (*Id.* at 566.) Defense counsel also requested that the court charge the jury with the lesser-included on the attempted murder charge of first-degree attempted assault, but the court denied the application. (*Id.* at 567.) Finally, defense counsel renewed his objection to the admissibility of Mr. Holloway's prior written statement. (*Id.* at 567-74.) As noted above, the court found the statement admissible for the purposes of impeaching Mr. Holloway's testimony. (*Id.* at 574.)

While deliberating, the jury sent a note to the court requesting to see certain exhibits, including photographs and a diagram. The prosecutor and defense counsel were present, and defense counsel waived petitioner's presence and stated that "we agreed that the exhibits can go in the back. That's fine." (*Id.* at 686-87.) Later during deliberations, the jury requested to see Mr. Holloway's written statement, Exhibit 22. (*Id.* at

687-88.)  Defense counsel again waived petitioner's presence, and after both sides had reviewed the note, the court stated, "As we've agreed all evidence can go in the back, and we will deliver it, now."  (*Id.* at 688.)  Neither the prosecutor nor defense counsel objected.  The jury later sent another note asking "to read, now, evidence 22."  (*Id.* at 710.)  Defense counsel again waived petitioner's presence and stated that, "I guess, the jury is entitled to it.  We said they can have the evidence in the back."  (*Id.* at 710.)

### B. Conviction and Sentence

At the conclusion of trial, the jury convicted petitioner of Manslaughter in the First Degree and Criminal Possession of a Weapon in the Second Degree.  (*Id.* at 712-13.) On September 15, 2006, the court sentenced petitioner to concurrent sentences of twenty years' imprisonment for the manslaughter conviction and ten years' imprisonment on the weapons conviction, with five years of post-release supervision. (*See* ECF No. 16, Sentence Tr. at 11.)

### C. Post-Trial Appeals in State Court

In October 2008, petitioner filed a brief in the Appellate Division, Second Department, arguing that: (1) the evidence was legally insufficient and the verdict was against the weight of the evidence; (2) the prosecution improperly impeached a witness with a prior inconsistent statement and the

statement was improperly provided to the jury during deliberations; (3) numerous evidentiary errors deprived him of a fair trial; and (4) his sentence should have run concurrently to a prior unrelated sentence. (ECF No. 15, Brief for Appellant dated 10/2008.) The state opposed petitioner's appeal, responding that (1) the prosecution proved petitioner's guilt beyond a reasonable doubt; (2) the trial court properly permitted the prosecution to impeach Mr. Holloway with his prior written statement, and any claim otherwise was unpreserved; (3) petitioner's claims regarding purported evidentiary errors at trial were unpreserved and/or meritless; and (4) the trial court was authorized to impose its sentence consecutively to the unrelated sentence that petitioner had been serving prior to the shooting. (ECF No. 15, Brief for Respondent dated 2/3/09.)

In a unanimous decision, the Appellate Division affirmed Mr. Spurgeon's conviction on June 9, 2009. (ECF No. 15, *People v. Spurgeon*, Ind. No. 842/2003, Decision & Order dated 6/9/09.) The Appellate Division held that the evidence was sufficient to establish petitioner's guilt beyond a reasonable doubt. (*Id.* at 1.) It also ruled that, though the trial court had improperly admitted a prior statement to impeach Mr. Holloway, the error was harmless given the overwhelming evidence of Mr. Spurgeon's guilt. (*Id.* at 1-2.) The appellate court found that the trial court acted within its discretion in

8

directing consecutive rather than concurrent sentences. (*Id.* at 2.)  Finally, the appellate court ruled that the petitioner's remaining contentions about the provision of Holloway's statement to the jury and various evidentiary issues were unpreserved for appellate review and, in any event, did not warrant reversal. (*Id.*)

The New York Court of Appeals denied Mr. Spurgeon leave to appeal on November 12, 2009. *People v. Spurgeon*, 13 N.Y.3d 863 (2009).  Petitioner thereafter filed the instant petition and moved to stay the action while he exhausted claims based on newly discovered evidence and ineffective assistance of trial counsel. (ECF No. 1, Petition; ECF No. 3, Motion to Stay.)  By order dated March 31, 2011, the court granted petitioner's motion to stay as to his newly discovered evidence of innocence claim and denied the motion as to his ineffective assistance of trial counsel and prosecutorial misconduct claims. (ECF No. 4, Order.)

Petitioner then brought a *pro se* motion in Supreme Court, Queens County, pursuant to C.P.L. § 440.10 to vacate the judgment of conviction and set aside his sentence. (ECF No. 15, Notice of Motion to Vacate Judgement ("440 Mot.") dated 4/21/2011.)  In his motion, petitioner asserted that (1) new evidence, in the form of an affidavit from an eyewitness to the shooting, Taiwon Jamison, established petitioner's innocence;

9

(2) he was deprived of the effective assistance of counsel when his attorney unilaterally waived his right to testify and made other errors over the course of the trial; and (3) his right to a fair trial was violated by the prosecution and the trial court permitting Mr. Briggs to refuse to testify in front of the jury and the court failing to issue a jury instruction on the limited probative value of flight. (*Id.*) The affidavit from Mr. Jamison was annexed to Mr. Spurgeon's motion and indicated that Mr. Jamison had seen another individual, Leonard Jackson,[3] commit the shooting for which Mr. Spurgeon was convicted. (*Id.*)

The Supreme Court, Queens County denied petitioner's § 440 motion in its entirety, finding that (1) Mr. Spurgeon's claims based on the trial court's error, prosecutorial misconduct, and ineffective assistance of counsel were procedurally barred due to petitioner's failure to preserve the claims on direct appeal, and (2) the affidavit from Mr. Jamison did not meet the necessary criteria for newly discovered evidence. (ECF No. 15, Decision and Order dated 7/29/11, at 2-5.) Mr. Spurgeon then moved pursuant to C.P.L.R. § 2221 for an order granting leave to renew and reargue his § 440.10 motion.[4]

---

[3] The State asserted in its response to petitioner's § 440 motion that Mr. Jackson died on February 2, 2003. (ECF No. 15, Affirmation and Memorandum of Law in Opposition to Motion to Vacate Judgment ("440 Opp.") dated 7/15/11 at 14; *see also* ECF No. 15, Decision and Order dated 7/29/11, at 3-5.)

[4] Petitioner annexed affidavits from Burnell Lopez, petitioner's mother, and Felicia Crumpton, petitioner's wife, to his motion to renew and reargue that

(*See* ECF No. 15, Notice of Motion dated 8/23/11.)  The court
denied the motion for renewal but granted the motion for
reargument in order to address certain facts that petitioner
argued were misapprehended by the court in its order denying
petitioner's § 440 motion.  (ECF No. 15, Decision and Order
dated 12/21/11, at 1.)  Upon reargument, the court again denied
petitioner's motion.  (*Id.* at 7.)

      While his motion to renew and reargue was pending, Mr.
Spurgeon moved in the Appellate Division for leave to appeal the
denial of his § 440.10 motion.  (ECF No. 15, Notice of
Application dated 8/30/11.)  On January 5, 2012, the Appellate
Division denied Mr. Spurgeon's application for leave to appeal.
(ECF No. 15, Decision & Order on Motion dated 1/5/12.)

### D. The Instant Petition

      On February 2, 2011, Mr. Spurgeon filed a petition for
a writ of habeas corpus in this court.  Shortly thereafter, Mr.
Spurgeon moved to stay his habeas petition in order to exhaust
his state court remedies by letter dated February 15, 2011.
(ECF No. 3, Motion to Stay at 1–4.)  The court granted the
motion in part and held the case in abeyance to allow petitioner

---

had not been included with his original § 440 motion.  Although petitioner
did not provide an excuse for his failure to include the affidavits with his
motion in chief, the court considered them and found that the affidavits did
not warrant a different outcome in light of "significant credibility issues."
(ECF No. 15, Decision and Order dated 12/21/11, at 5-6.

to fully exhaust his newly discovered evidence of innocence claim in state court.  (ECF No. 4, Order dated 3/31/11.)

Following the state court proceedings discussed above, on January 31, 2012, this court granted Mr. Spurgeon's motions to reopen his case and to extend the time to amend his petition. (*See* Electronic Order dated 1/31/12.)  Mr. Spurgeon filed an amended petition for a writ of habeas corpus on April 27, 2012. (Am. Pet. at 1.)  Respondent filed its opposition on October 3, 2012.  (*See* Opp.)  Petitioner filed a reply on January 22, 2013. (*See* ECF No. 24, Petitioner's Reply to Respondent's Affirmation and Memorandum of Law in Opposition ("Reply") dated 1/22/13.) The court now considers Mr. Spurgeon's amended petition.

## STANDARD OF REVIEW

### A. Exhaustion

Section 2254 requires a petitioner to exhaust state judicial remedies prior to seeking relief in federal court.  28 U.S.C. § 2254(b)-(c).  In order to exhaust his or her state court remedies, a petitioner must "fairly present" federal constitutional claims to the highest state court with jurisdiction over them "in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (alteration in original) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  If the petitioner "fails to

12

exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, [the court] 'must deem the claim[] procedurally defaulted.'" *Carvajal*, 633 F.3d at 104 (quoting *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001)).

**B. Procedural Default and Adequate and Independent State Grounds**

A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Downs v. Lape*, 657 F.3d 97, 101-02 (2d Cir. 2011) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)); *see also Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Federal review is barred whenever "a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).

Additionally, in order for a procedural bar to qualify as adequate to preclude review by the federal court, it must be "based on a rule that is firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal citations and quotation marks

omitted).  "New York's contemporaneous objection rule requires a
party to object to what he or she believes is a legal error in a
trial court's ruling or instruction 'at the time of such ruling
or instruction or at any subsequent time when the court had an
opportunity of effectively changing the same.'"  *Gutierrez v.
Smith*, 702 F.3d 103, 111 (2d Cir. 2012) (quoting N.Y. Crim.
Proc. Law § 470.05(2)).  A party procedurally defaults if it
fails to make a contemporaneous objection, and the issue is
unpreserved for appeal as a result.  *Id.*

### C. Excusing Procedural Default

State procedural default or failure to exhaust state
court remedies will operate as a bar to review unless the
petitioner can (1) establish cause for his default and actual
prejudice resulting from the alleged violation of federal law,
or (2) demonstrate that the failure to consider the petitioner's
claims would result in a fundamental miscarriage of justice.
*See Gutierrez*, 702 F.3d at 111; *Carvajal*, 633 F.3d at 104.

As to demonstrating cause and prejudice, a petitioner
may fulfil the cause requirement in two related ways.  First,
the petitioner can demonstrate that "some objective factor,
external to Petitioner's defense, interfered with his ability to
comply with the state's procedural rule."  *Id.* (citing *McClesky
v. Zant*, 499 U.S. 467, 493 (1991)).  Alternatively, the
petitioner can establish cause by demonstrating futility --

14

specifically, that "prior state case law has consistently rejected a particular constitutional claim." *Id.* (citing *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006)).

To establish prejudice, the petitioner must demonstrate that the alleged error resulted in "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks and citation omitted).

Even if the petitioner is unable to establish cause and prejudice, the procedural default may be excused if he can show that a fundamental miscarriage of justice would result, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citations omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (alteration in original) (quoting *Bousley v. United States,* 523 U.S. 614, 623 (1998)) (internal quotation marks omitted).

### D. AEDPA Deference to State Court Decision on the Merits

When a claim is exhausted and no other procedural bar applies, a court will consider the merits of the claim under the standard set out in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this standard, a court may grant habeas relief "with

respect to any claim that was adjudicated on the merits in State court proceedings" only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2). Unless the petitioner rebuts the state court's factual findings by clear and convincing evidence, the court must presume all state court factual determinations are correct. 28 U.S.C. § 2254(e)(1).

## ANALYSIS

Petitioner makes several arguments in support of his petition for a writ of habeas corpus, which the court addresses in turn.

### A. Actual Innocence

Mr. Spurgeon first argues that he is actually innocent. (*See* Am. Pet. at 1–2.) However, a claim of actual innocence "'is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Johnson v. Bellnier*, 508 F. App'x 23, 26 (2d Cir. 2013) (summary order) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). In other words, as noted above, a claim of actual

innocence may permit federal habeas review of a procedurally-defaulted constitutional claim. *See id.; see also Johnson v. Kirkpatrick*, No. 11 CIV. 1089, 2011 WL 3328643, at *17 (S.D.N.Y. Aug. 3, 2011), *adopted by Johnson v. New York*, No. 11 CIV. 1089, 2012 WL 112249 (S.D.N.Y. Jan. 12, 2012) ("The Supreme Court has explained that the fundamental miscarriage of justice exception is 'tied . . . to [a] petitioner's innocence' and exists to protect those who are 'actually innocent.'") (alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 321, 324 (1995)).

To override procedural default, a petitioner's actual innocence claim "must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (citing *House v. Bell*, 547 U.S. 518, 521 (2006)). For the claim to be credible, petitioner must possess "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" to support his or her claim. *Id.* (internal citations and quotation marks omitted). "[T]he habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (citing *Schlup*, 513 U.S. at 327-28). For the claim to be compelling, the petitioner must show

that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Dunham*, 313 F.3d at 730 (quoting *Schlup,* 513 U.S. at 327).

In support of his claim, Mr. Spurgeon submits an affidavit from an alleged eyewitness, Taiwon Jamison, who claims to have seen another person commit the crimes for which Mr. Spurgeon was convicted. (*See* Am. Pet. at 1-2; Ex. B., Affidavit of Taiwon Jamison ("Jamison Aff.") dated 9/19/10.) The state court here considered Mr. Spurgeon's evidence of actual innocence in connection with his § 440 motion to vacate his conviction and found the new evidence to be "devoid of credibility."[5] (*See* 7/29/11 Decision & Order at 6; 12/21/11 Decision & Order at 6-7.)

Although petitioner has proffered new evidence not presented at trial, the affidavit from Mr. Jamison is not reliable evidence that excuses Mr. Spurgeon's procedural default. Mr. Jamison avers in his affidavit that he did not report his eyewitness account of the shooting in the almost ten years that passed since petitioner's arrest because he was not

---

[5] Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Some courts have specifically observed that a state court's rejection of new evidence of actual innocence is entitled to a presumption of correctness in subsequent federal habeas corpus cases. *See, e.g.*, *In re John Byrd., Jr.*, 269 F.3d 561, 576 (6th Cir. 2001) (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)) (denying petitioner's request to remand his case to the district court for an evidentiary hearing on his actual innocence claim). Regardless of the deference paid to the state court's credibility determination, however, for the reasons discussed below, this court finds that petitioner has failed to adduce new reliable evidence to support his actual innocence claim.

aware that petitioner had been arrested and convicted of murder.

(Jamison Aff.)  He further states that he moved from Queens to

Brooklyn in the week following the shooting because he feared

retaliation from the intended victim of the shooting.  (*Id.*)

The reason he proffers for his lengthy silence, however, is

unsupportable and incredible, to the extent he avers that he was

unaware of petitioner's arrest and conviction.  A police officer

present when petitioner surrendered to the police stated in an

affidavit, submitted in connection with the state's opposition

to petitioner's § 440 motion, that Mr. Jamison was also present

at the precinct when petitioner surrendered, and thus he was

aware of petitioner's arrest and prosecution.[6]  (*See* Opp. at 57;

*see also* ECF No. 15, Affidavit of Captain James Marron dated

7/8/11.)

        The only other evidence corroborating Mr. Jamison's

account of the shooting is petitioner's recollection of the

shooting, as set forth in the affidavit annexed to the amended

petition.  (Am. Pet. Ex. A, Affidavit of Shatell Spurgeon

("Spurgeon Aff.") dated 4/24/12.)  In his affidavit, Mr.

---

[6] Furthermore, contrary to Mr. Jamison's representation that he moved out of
Queens shortly after the shooting, records of his arrests in 2002 and 2003
indicated that his home address was in Queens.  At the time of Mr. Jamison's
arrests on March 8, 2002 and July 3, 2002, the address provided was the same
as petitioner's mother's address.  (*See* Opp. at 57-58; 440 Opp. at 10-11.)
Similarly, DD5s from the post-shooting investigation indicate that Mr.
Jamison was present at petitioner's mother's apartment on multiple occasions
while the police searched for petitioner.  (ECF No. 15, Affirmation and
Memorandum of Law in Opposition to Motion to Renew and Reargue ("Mot. to
Renew Opp.") dated 12/2/11, Ex. 1.)

Spurgeon avers that he, too, observed the actual shooter, Leonard Jackson, get into an argument with Justice Favor, then pull a gun from his pants and shoot in Mr. Favor's direction. (*Id.* at 1-2.)  The absence of any evidence in the trial record, however, as to the presence of Mr. Jackson or any other potential shooter underscores the weakness of petitioner's innocence claim.  Although petitioner states that he told his trial counsel about his observations when he was first assigned counsel, his counsel submitted an affirmation in connection with respondent's opposition to petitioner's § 440 motion in which he denied that petitioner had informed him of a second shooter. (ECF No. 15, Affidavit of Andrew Worgan, Esq. dated 7/6/11.)

Petitioner also suggests that Mr. Jamison's eyewitness account is reliable because it "explains what precipitated the murder of Spurgeon's brother by Justice Favor," who Mr. Jamison avers was the intended target of the gunman.  (Mem. at 24.) Petitioner does not explain how the murder of his brother corroborates Mr. Jamison's contention that the shooter was someone other than petitioner.  Petitioner presumably means to argue that Mr. Favor, as the intended target of the shooter, mistakenly retaliated against petitioner's family because he believed petitioner to be the shooter.  That is no basis to conclude, however, that petitioner did not commit the offense.

Most importantly, the new affidavit from Mr. Jamison cannot overcome the substantial evidence of petitioner's guilt adduced at trial.  Mr. Spurgeon does not explain how any testimony from Mr. Jamison would be more credible to a jury than the substantial evidence presented at trial making it "more likely than not that no reasonable juror would have convicted [Mr. Spurgeon]."  *See People v. Spurgeon*, 880 N.Y.S.2d 707, 708 (N.Y. App. Div. 2009) (noting "the overwhelming evidence of the defendant's guilt, which included testimony from two eyewitnesses").  Mr. Jamison's version of events directly conflicts with the testimony elicited from eyewitnesses that petitioner engaged in a stare-down with Mr. Briggs and then fired a gun in his direction, as well as with testimony that petitioner admitted to other individuals that he did not intend to shoot Mr. Waiters.  *See Trisvan v. Ercole*, No. 07-CV-4673, 2015 WL 419685, at *10 (E.D.N.Y. Jan. 30, 2015) ("new evidence cannot be viewed in isolation. It must be arrayed against the forceful evidence supporting the jury's guilty verdict.").

Mr. Jamison's affidavit is not a "trustworthy eyewitness account" making it probable that no reasonable juror would have convicted Mr. Spurgeon.  Therefore, Mr. Spurgeon's claim of actual innocence falls short--both as a standalone claim and as a means by which to allow the court to review petitioner's otherwise-barred constitutional claims.

## B. Insufficient Evidence

Mr. Spurgeon argues that the prosecution presented insufficient evidence of his intent and therefore failed to prove his guilt beyond a reasonable doubt. (Am. Pet. at 3-4.)

The Appellate Division, Second Department affirmed the judgment of the Supreme Court, Queens County and ruled that, "[v]iewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish defendant's guilt . . . beyond a reasonable doubt." (ECF No. 15, Decision & Order dated 6/9/09, at 1). Mr. Spurgeon sought leave to appeal to the New York Court of Appeals on all issues raised in the Appellate Division, but the Court of Appeals denied his application without opinion. *People v. Spurgeon*, 13 N.Y.3d 863 (2009). Accordingly, the Appellate Division's opinion, *People v. Spurgeon*, 880 N.Y.S.2d 707 (N.Y. App. Div. 2009), represents the last-reasoned state opinion. *See Warren v. Goord*, No. 06-CV-1423, 2013 WL 1310465, at *20 (E.D.N.Y. Mar. 28, 2013) (citing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991)). Because that ruling represents a decision on the merits[7] of petitioner's sufficiency of the evidence claim, the court next reviews the state court judgment under the AEDPA standard.

---

[7] "For the purposes of AEDPA, a state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits' whenever 'it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" *Singleton v. Duncan*, No. 03 CV 561, 2006 WL 73734, at *5 (E.D.N.Y. Jan. 10, 2006) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)).

AEDPA requires this court to assess whether the state court decision was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 22 U.S.C. § 2254(d). The Appellate Division's decision in petitioner's criminal case was neither.

To overturn a conviction based on insufficiency of the evidence, a court must find that, "viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[8] *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker v. Matthews*, 132 S. Ct. 2148, 2152, 183 L. Ed. 2d 32 (2012) (citation and quotation marks omitted).

---

[8] When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citation omitted). In order to obtain a conviction of first-degree manslaughter, the prosecution was required to prove that petitioner, with the intent to cause serious physical injury to a person, caused the death of that person or another person. *See* N.Y. Penal Law § 125.20(1).

Under this "twice-deferential standard," *see id.*, the Appellate Division's refusal to overturn the verdict was not contrary to, or an unreasonable application of, Supreme Court-established federal law. Mr. Spurgeon does not dispute that evidence was introduced from which the jury could infer that Mr. Spurgeon and Mr. Briggs "made eye-contact or had an unknown argument" and that Mr. Spurgeon fired at least one gunshot at Mr. Briggs. (*See* Mem. at 28.) He argues that intent was not proven beyond a reasonable doubt because the prosecution did not provide a motive for the shooting or introduce evidence establishing at whom or which body part the shooter's gun was pointed.

At trial, Alvin Briggs testified that after his stare down with Mr. Spurgeon, he saw Mr. Spurgeon reach beneath his shirt to his waistband and then heard a shot. (Tr. at 499-500.) Christopher Young testified that Mr. Spurgeon got into an argument with Mr. Briggs in the middle of the street, then pointed a gun in the direction of Mr. Briggs and fired several shots. (*Id.* at 416-18.) Additional evidence was adduced that (1) Mr. Spurgeon fled from the scene after Mr. Waiters was hit, (2) Mr. Spurgeon asked Mr. Young to tell Mr. Waiters that the gunshots were not intended for him, and (3) Mr. Spurgeon told Mr. Waiters' brother that he loved Mr. Waiters and that "it was an accident."

Given the evidence presented at trial, a rational jury could have found the elements of the crime beyond a reasonable doubt, *see Jackson*, 443 U.S. at 319.  Two eyewitnesses testified to seeing petitioner argue with Mr. Briggs and then reach for his waistband.  The witnesses also either heard or saw shots fired immediately thereafter.  Those observations, when combined with the testimony regarding petitioner's actions following the shooting, and absent conflicting accounts in the record, could reasonably support a determination that petitioner possessed the requisite intent.  Accordingly, the state court reasonably concluded that there was sufficient evidence for the jury to find that Mr. Spurgeon, with the intent to cause serious physical injury to another person, caused the death of that person or a third person.

Petitioner argues that the Appellate Division's decision was an unreasonable application of established federal law because it found that petitioner's intent could have been inferred "from his conduct and the surrounding circumstances," although the trial court did not charge the jury that it could consider the surrounding circumstances when determining petitioner's intent.  (Reply at 2-3.)  A federal court cannot issue a writ of habeas corpus based on "a perceived error of state law."  *Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) (citation omitted).  Mr. Spurgeon's contention that the

evidence of intent was insufficient to convict him due to the language omitted from the jury charge is based on his interpretation of state law and not clearly-established Supreme Court precedent. (*See* Reply at 3 ("under New York State law, a review of the evidence must be based on the court's charge as given without objection).) Accordingly, it is not a proper ground for habeas relief.

In any event, surrounding circumstances are properly considered as circumstantial evidence of intent. *See, e.g.*, *Jones v. Duncan*, 162 F. Supp. 2d 204, 216-17 (S.D.N.Y. 2001). Mr. Spurgeon's contention that the Appellate Division's consideration of "surrounding circumstances" suggests that it improperly considered evidence outside the trial record is conclusory and without merit.[9]

Given the evidence at trial, the court finds that the Appellate Division's decision--that petitioner failed to demonstrate that no rational juror could find that he intended to cause serious physical injury to either Mr. Waiters or Mr. Briggs--was not objectively unreasonably. Accordingly, the court denies Mr. Spurgeon's petition insofar as it is based on a claim of insufficient evidence for his conviction.

---

[9] Furthermore, this argument was raised for the first time in the instant petition and is therefore procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

## C. Ineffective Assistance of Counsel and Prosecutorial Misconduct

Mr. Spurgeon also seeks habeas relief on the basis of alleged ineffective assistance of counsel and prosecutorial misconduct at trial.  (Am. Pet. at 8-13; Mem. at 37-41.)  Mr. Spurgeon argues that his trial counsel was ineffective for failing to object to Mr. Briggs being called to testify.  He also argues that the prosecution improperly called Mr. Briggs to the witness stand, adduced testimony that Mr. Briggs was initially afraid to testify, and revisited Mr. Briggs's remarks during summations.  The court previously denied petitioner's motion to stay this proceeding in order to exhaust his ineffective assistance of counsel and prosecutorial misconduct claims (although the court did stay the action to allow him to exhaust his newly discovered evidence of innocence claim).  (ECF No. 4, Order dated 3/31/11.)  As noted in that earlier ruling, "petitioner has failed to establish 'good cause' for failing to first present his claims for ineffective assistance of trial counsel and prosecutorial misconduct to the state courts."  (*Id.* at 6.)

Despite this court's ruling,[10] Mr. Spurgeon included in his C.P.L § 440.10 motion claims of ineffective assistance of

---

[10] Although this court denied Mr. Spurgeon's motion for a stay to exhaust his ineffective assistance claim, out of an abundance of caution and in deference to his pro se status, the court deems the claim exhausted but ultimately finds it procedurally barred.

counsel and prosecutorial misconduct (*see* 440 Mot. at 28-33),
which was ultimately denied by the Supreme Court, Queens County.
The § 440.10 court concluded that Mr. Spurgeon's ineffective
assistance of counsel claim was procedurally barred under C.P.L.
§ 440.10(2)(c) because the issues raised appeared in the trial
record and, thus, the claim could have been raised on direct
appeal. (ECF No. 15, Decision and Order dated 7/29/11, at 3-5.)
The § 440.10 court, which rendered the last-reasoned state court
opinion,[11] decided Mr. Spurgeon's ineffective assistance claim on
an independent and adequate state law ground. *See Garcia v.
Lee*, No. 10-cv-5287, 2012 WL 3822137, at *19 (S.D.N.Y. Aug. 28,
2012), *adopted by* 2014 WL 406209 (S.D.N.Y. Feb. 3, 2014)
("[t]here is no question that [C.P.L.] § 440.10(2)(c)" is a
firmly established and regularly followed rule that qualifies as
adequate state law ground barring federal habeas review).

Petitioner's prosecutorial misconduct claim, however,
insofar as it is based on the prosecution's conduct relating to
Mr. Briggs' testimony, was not raised either on direct appeal or
in petitioner's § 440 motion.[12] Petitioner no longer has an
available state court forum in which to bring this claim,

---

[11] Petitioner's application for leave to appeal to the Second Department was
denied on January 5, 2012. (ECF No. 15, Decision & Order on Motion, dated
1/5/12.)

[12] Petitioner raised other claims of prosecutorial misconduct relating to the
introduction of Mr. Holloway's prior statement in state court, none of which
are at issue in the instant petition.

rendering it ineligible for federal habeas review.  *See Coleman*,
501 U.S. at 735 n.1 (stating that where a petitioner has "failed
to exhaust state remedies and the court to which the petitioner
would be required to present his claims in order to meet the
exhaustion requirement would now find the claims procedurally
barred . . . [,] there is a procedural default for purposes of
federal habeas regardless of the decision of the last state
court to which the petitioner actually presented his claims").

        Petitioner's ineffective assistance of counsel and
prosecutorial misconduct claims are thus procedurally barred and
reviewable by this court only if petitioner has shown cause and
prejudice or a fundamental miscarriage of justice.  *See McKinnon
v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69,
71 (2d Cir. 2011) (summary order) (citing *Coleman v. Thompson*,
501 U.S. 722, 750 (1991)).  As discussed above, petitioner has
failed to demonstrate that he is actually innocent such that a
fundamental miscarriage of justice would result if the court
does not review his claims.  Neither has petitioner made any
showing whatsoever of cause[13] for his failure to raise an
ineffective assistance of counsel or prosecutorial misconduct

---

[13] In petitioner's letter motion to stay the petition while he pursued state
court remedies, he stated that his ineffective assistance claim "still needs
to be somewhat developed" and offered no explanation at all for his failure
to raise his prosecutorial misconduct claim in state court. (*See* ECF No. 4,
Order dated 3/31/11, at 6.)  This court found that it would be an abuse of
discretion to allow petitioner to exhaust the claims in state court because
he had failed to show good cause for his failure to exhaust the claims and
denied the motion as to those claims. (*Id.* at 6-8.)

claim on direct appeal or prejudice that would result if the claims are not considered by this court. (*Cf.* Reply at 8 (requesting that claims respondent asserted to be procedurally barred be heard on the merits "because petitioner [h]as set forth and demonstrated his actual innocence.".) Accordingly, this court cannot review the claims.[14]

### E. Evidentiary Errors

Mr. Spurgeon also claims that various evidentiary errors, including some related to Mr. Briggs' testimony, Mr. Holloway's prior written statement, and the lack of jury instruction on flight, deprived him of the constitutional right to a fair trial. (Am. Pet. at 4-8.)

#### 1. Holloway's statement

Mr. Spurgeon's first argument concerns the admission of Victor Holloway's prior statement. (*Id.* at 4.) The Appellate Division ruled that this statement was improperly admitted into evidence because Mr. Holloway's testimony that he did not recall whether he had seen petitioner at the crime scene did not "affirmatively damage the People's case." (ECF No. 15, Decision & Order dated 6/9/09, at 2 (citing, *inter alia*, C.P.L. § 60.35).) Nevertheless, the court found that the error was harmless in light of the other evidence of petitioner's guilt.

---

[14] Because the court declines to review Mr. Spurgeon's ineffective assistance and prosecutorial misconduct claims on the ground that they have been procedurally defaulted, the court does not address the merits of the claims.

(*Id.* (citing *People v. Crimmins*, 36 N.Y.2d 230 (N.Y. 1975).)
Because the claim was adjudicated on the merits, this court must
consider whether the Appellate Division's determination was
contrary to or an unreasonable application of Supreme Court law.
*See* 28 U.S.C. §§ 2254(d)(1)-(2).

Although habeas relief is generally unavailable for
claims of erroneous evidentiary rulings, *Lewis v.* Jeffers, 497
U.S. 764, 780 (1990), a habeas petitioner can prevail on a claim
that an evidentiary error amounted to a violation of his
constitutional rights if he demonstrates "that the error was so
pervasive as to have denied him a fundamentally fair trial."
*Abbas v. Superintendent Elmira Corr. Facility*, No. 02-CV-0824,
2004 WL 1243146, at *17 (E.D.N.Y. Apr. 28, 2004) (citing *United
States v. Agurs,* 427 U.S. 97, 108 (1976)).  The applicable test
is whether the erroneously admitted evidence . . . was
sufficiently material to provide the basis for conviction or to
remove a reasonable doubt that would have existed on the record
without it.  In short it must have been crucial, critical,
highly significant."  *Id.* (quoting *Collins v. Scully,* 755 F.2d
16, 19 (2d Cir. 1985)).

Even if the trial court committed constitutional
error, any error is harmless unless it "'had substantial and
injurious effect or influence in determining the jury's
verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993).

The Supreme Court has outlined several factors to consider when assessing whether the error had a substantial and injurious effect or influence on the jury: "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of other properly admitted evidence." *United States v. Lombardozzi,* 491 F.3d 61, 76 (2d Cir. 2007) (citing *Zappulla v. New York*, 391 F.3d 462, 468 (2d Cir. 2004)). "The strength of the prosecution's case, however, 'is probably the single most critical factor.'" *Id.* (quoting *United States v. Reifler,* 446 F.3d 65, 87 (2d Cir. 2006)).

The Appellate Division's ruling that the trial court's error in admitting Mr. Holloway's statement was harmless was neither contrary to nor an unreasonable application of that guidance from the Supreme Court. As the Appellate Division found, the trial court erred by admitting Mr. Holloway's statement in evidence under New York law. *See* C.P.L. § 60.35[1] (introduction of prior written statement permissible only when witness gives testimony "which tends to disprove the position of [the party who called the witness]"); *People v. Fitzpatrick,* 40 N.Y.2d 44, 52 (N.Y. 1976) (holding that the testimony of a witness who states that he cannot recall the events in question does not "tend to disprove" the prosecution's case).

The trial court's error, however, does not rise to the level of constitutional error sufficient to warrant the grant of habeas relief.  Mr. Holloway's statement, which he professed not to recall giving, was not crucial or critical to the jury's verdict; the jury also had before it eyewitness testimony from Mr. Briggs and Mr. Young, as well as accounts of petitioner's actions and statements in the ensuing search for the shooter. Thus it cannot be said that the improper admission of Mr. Holloway's statement provided the basis for petitioner's conviction or was "so pervasive as to have denied [petitioner] a fundamentally fair trial."

Furthermore, even if constitutional error was committed, this court agrees that any such error was harmless. In so finding, the Appellate Division cited to *People v. Crimmins*, 36 N.Y.2d 230 (N.Y. 1975), in which the New York Court of Appeals adopted the standard for determining harmless error set forth in *Chapman v. California*, 386 U.S. 18 (1967). Although the *Chapman* standard has since been supplanted by the *Brecht* standard in post-AEDPA federal habeas cases, *see Fry v. Pliler*, 551 U.S. 112, 121 (2007), the more restrictive *Brecht* standard is also met by these facts.  As discussed above, the prosecution presented evidence of petitioner's guilt from numerous other sources, including from two eyewitnesses who also placed petitioner at the scene of the shooting.  Particularly

given that Mr. Holloway testified only that he could not recall whether he saw petitioner at the scene of the shooting, his written statement, offered and received for the purpose of impeaching his credibility, cannot be said to have "remove[d] a reasonable doubt that would have existed on the record without it." The court thus finds that it was neither contrary to nor an unreasonable application of Supreme Court law for the state court to conclude that the erroneous admission of Mr. Holloway's statement was harmless and did not deprive Mr. Spurgeon of his right to a fair trial.

Mr. Spurgeon next contends that Holloway's statement was improperly given to the jury during deliberations without a limiting instruction. (Am. Pet. at 4.) The Appellate Division concluded that this claim had not been preserved for review. (ECF No. 15, Decision & Order dated 6/9/09, at 2.) This qualifies as an independent and adequate state law ground and the claim is procedurally barred from federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011). Finally, as discussed further above, Mr. Spurgeon has not shown cause and prejudice or that a fundamental miscarriage of justice will result if his claim is not heard. As a result, the court cannot review petitioner's claims relating to the admission of Mr. Holloway's prior statement.

## 2. Other Evidentiary Issues

Mr. Spurgeon complains of numerous other evidentiary errors, which he argues both individually and collectively deprived him the constitutional right to a fair trial. He identifies problematic evidence regarding several topics: his flight from the scene of the shooting, his family's attitude during the search for the shooter, his family's purported intimidation of witnesses, and the victim's character. (Am. Pet. at 5-6.) He also complains about the trial court permitting Alvin Briggs to refuse to testify in the jury's presence, as well as about the court's failure to issue a jury charge on flight. (*Id.* at 7.) Lastly, he argues--in the event that no one of these matters independently constitutes a violation of his constitutional rights--that the cumulative effect of the errors deprived him of a fair trial. (*Id.* at 8.)

In its affirmance of petitioner's conviction, the Appellate Division, after specifically discussing petitioner's claims regarding the admission in evidence of Mr. Holloway's written statement, wrote that petitioner's "remaining contentions are unpreserved for appellate review and, in any event, do not warrant reversal." (ECF No. 15, Decision & Order dated 6/9/09, at 2.) The Appellate Division's ruling that petitioner's claims were unpreserved for appellate review constitutes an independent and adequate state ground, even

though the court found in the alternative that the remaining arguments did not warrant reversal. *See Garcia v. Lewis*, 188 F.3d 71, 77-79 (2d Cir. 1999) (citing, *inter alia*, *Harris v. Reed*, 489 U.S. 255, 263, 264 n.10 (1989)). This court is therefore precluded from reviewing those claims absent a showing of cause and prejudice or a fundamental miscarriage of justice. *See McKinnon*, 422 F. App'x at 71 (citing Coleman, 501 U.S. at 750). As discussed above, Mr. Spurgeon had not made the requisite showings, and the court cannot review his unpreserved evidentiary claims.

Even if the Appellate Division was considered to have reviewed petitioner's remaining claims based on evidentiary errors on the merits,[15] its decision that those claims did not warrant reversal is entitled to AEDPA deference because it was neither contrary to nor an unreasonable application of clearly established federal law. State court determinations of state law are not subject to federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Evidence regarding petitioner's flight from the scene of the shooting, his family's attitude during the search for the shooter, his family's purported intimidation of witnesses, and the victim's character was relevant to the prosecution's theory of the case, including

---

[15] The Second Circuit has treated as an adjudication on the merits a state court decision concluding that a petitioner's claim was unpreserved and, regardless, meritless. *See Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004).

the chronology of events, petitioner's motive, and the personal relationships between the individuals involved. The evidence adduced was not "so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted). Neither are the evidentiary errors petitioner complains of sufficiently material, either individually or collectively, to provide the basis of his conviction given the universe of evidence presented of petitioner's guilt.

Petitioner similarly fails to demonstrate that his constitutional rights were violated by the trial court's failure to instruct the jury on the limited probative value of a defendant's flight. Claimed violations of state law are not cognizable habeas claims, and petitioner has not shown that the court's failure to *sua sponte* charge the jury with regard to the probative value of flight, considered in the context of the charge as a whole, "so infected the entire trial that the resulting conviction violates due process." *See Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Accordingly, petitioner is not entitled to habeas relief for the trial court's purported errors in permitting certain evidence and failing to charge the jury on flight.

## CONCLUSION

For the reasons stated above, Mr. Spurgeon's petition is denied in its entirety.  In light of the dismissal of the petition, his request for an evidentiary hearing is denied.  The Clerk of the Court is respectfully requested to serve a copy of this order on petitioner, note service on the docket, and close this case.

**SO ORDERED.**

**Dated:** Brooklyn, New York
        July 31, 2015

                            _____/s/_____
                            KIYO A. MATSUMOTO
                            United States District Judge
                            Eastern District of New York